FILED
2024 Feb-21  AM 07:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

**SONYA WALLACE,**
     Plaintiff,

**v.**

**KOCH FOODS OF ASHLAND, LLC,**
     Defendant.

**Case No. 1:21-cv-1292-CLM**

## MEMORANDUM OPINION

Sonya Wallace ("Wallace") sues Koch Foods of Ashland, LLC ("Koch Foods") for Disparate Treatment (Count One); Retaliation (Count Two); and Failure to Accommodate (Count Three) under the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12112) and ADA Amendments Act of 2008 ("ADAAA") (42 U.S.C. § 12101). Koch Foods moves for summary judgment. (Doc. 31). For the reasons stated within, the court **GRANTS** Koch Foods' motion. (Doc. 31).

## BACKGROUND

1. <u>Wallace's Work and Medical History Before Koch Foods</u>

Wallace worked for Tyson Foods ("Tyson") at its poultry plant in Ashland, Alabama. Wallace began having right wrist pain in 1999, so Tyson sent her to the doctor in October 2000. The doctor placed Wallace on work restrictions that restricted the use of both hands. Two months later, Wallace was diagnosed with carpal tunnel syndrome. (Doc. 33, p. 4). Wallace had carpal tunnel surgery in January 2001, and remained on work restrictions until March 2001. In May 2001, she returned to her regular job. At some point, Wallace left Tyson and began a new job at the City of Talladega. In 2007, Koch Foods bought the Ashland poultry plant from Tyson.

2. Wallace's First Application for Employment with Koch Foods

When Koch Foods offers an applicant a job, the offer is conditional on the applicant passing a medical assessment. This assessment helps determine whether the employee can perform the essential functions of their position, with or without a reasonable accommodation, at the time of their hiring. (Doc. 33, pp. 6-7); (Doc. 38, pp. 21-22). During the medical assessment, the applicant completes a "Post Offer Medical Assessment" ("POMA") form that asks: "Have you ever received medical treatment for any of the following?" followed by several medical conditions.

Wallace applied to work for Koch Foods in April 2019 and received a conditional job offer. So Wallace completed the POMA form. Wallace checked the boxes indicating that she had no prior medical treatment for her wrists; no prior hand or finger problems; no prior pain or weakness in her wrists; no prior medical treatment for carpal tunnel syndrome; no prior medical treatment for numbness, tingling of hands or fingers; no prior work injuries; and no prior work restrictions. When asked to indicate any prior surgeries, Wallace did not list her carpal tunnel surgery.

After an applicant completes the POMA form, the nurse assesses the applicant's fingers, thumbs, wrists, hands, shoulders, neck, knees, and back. Koch Foods' nurse, Pamela McCullers, circled "WNL" (within normal limits) for each body part on Wallace's form. Wallace says that she told Nurse McCullers of her previous carpal tunnel surgery during this physical exam, even though neither she nor Nurse McCullers wrote it on her form. At the bottom of the POMA form, the applicant must certify that the information stated is true and acknowledge that falsification is grounds for discharge. Wallace did so:

I realize that any evidence of falsification, misrepresentation or omission of this health history and health record will be considered grounds for discharge. I certify that I have answered all questions truthfully and have not knowingly withheld any information concerning questions about my health, either past or present.

Sonja Wallace
Applicant Signature

m uller
Nurse Signature

Date 4/01/19
4-1-19

Date

(Doc. 32-2, p. 20). Wallace signed multiple forms on April 4, 2019 during her first application process with Koch Foods:

(1) the POMA form with all findings from her medical examination with Nurse McCullers,
(2) an "Essential Job Function Qualification" form,[1]
(3) a "Hiring Practices and No Rehire List"[2], and
(4) the Koch Foods Rules of Conduct which state:



**KOCH FOODS**
*America's Chicken Specialists*

### RULES OF CONDUCT – TYPE 1 (Reviewed 1-2-18)

VIOLATIONS OF THE FOLLOWING RULES WILL BE GROUNDS FOR *IMMEDIATE TERMINATION* (EVEN ON THE FIRST OFFENSE).

1. The possession, storage of, use, or presence in the system of alcohol, drugs, or other controlled substance (including illegal use or disbursement of prescription drugs).
2. Refusing to submit to a drug or alcohol test.
3. Filing a fraudulent worker's compensation claim.
4. Falsifying Company employment or pay documents or any other work-related document, or making false representations verbally or in writing.
5. Theft of any product, Company property, or another person's property.
6. Any act of sabotage.
7. Becoming involved in a crime, an accessory to crime, or withholding information concerning a crime.
8. Creating a hostile work environment or otherwise violating the Company's anti-harassment and anti-discrimination policy.
9. Willful refusal to follow reasonable instructions or directions of a supervisor or manager.
10. Intentional or reckless acts, including horseplay or practical jokes, which endanger employees or causes destruction of Company property.
11. Possession or use of firearms or other weapons on Company property or while on duty.
12. Possession or use of dangerous materials or intoxicants on Company property or while on duty without authorization.
13. Job abandonment.
14. Fighting or provoking a fight (DO NOT PLACE HANDS ON OTHER PEOPLE OR USE PROVOKING LANGUAGE).
15. Making false or malicious statements to harm or destroy the reputation, authority, or official standing of an employee, the Company, or its products.
16. Falsification of any work record, time clock punch, report, document, form, application, etc..
17. Sleeping on the job.
18. Unauthorized use of Company-leased or -owned equipment, tools, or machinery.
19. Gambling on Company premises.
20. Use of Profanity towards employees, supervisors, management, visitors, vendors, or customers.
21. Threats of violence or terrorism toward anyone.
22. Serious misconduct that is, or is not, covered in this policy.
23. Smoking in any Koch Foods facility or in any area other than designated outside areas.

---

[1] On this form Wallace checked off that there were no essential job functions that she couldn't presently perform without an accommodation, but she wrote separately that she could not perform the "live hang" position. According to Nurse McCullers, "live hang" is where the employee physically places the live bird on the shackle to kill it, which is one of the hardest jobs because it is rough on the hands. Wallace never performed the live hang position at Koch Foods.

[2] This list outlined hiring procedures for the application process, Human Resources (HR) screening and orientation, the medical/safety assessment, and the reasonable accommodation process.

(Doc. 33, p. 8); (Doc. 32-2, p. 22). Once Wallace signed off on these forms and completed the application process, she was qualified to attend orientation. But Wallace did not return to work at Koch Foods after orientation in 2019 because her father passed away. (Doc. 38, p. 4).

3. <u>Wallace's Second Application, Employment, and Medical History at Koch Foods in 2020</u>

In June 2020, Wallace reapplied for a position with Koch Foods. She went through the same application process, once again completing the POMA form and undergoing a medical examination with Nurse McCullers.

Wallace completed the forms exactly as she had in 2019. She again checked the boxes indicating that she had no prior medical treatment for her wrists; no prior hand or finger problems; no prior pain or weakness in her wrists; no prior medical treatment for carpal tunnel syndrome; no prior medical treatment for numbness, tingling of hands or fingers; no prior work injuries; and no prior work restrictions. When asked about prior surgeries, Wallace again failed to list carpal tunnel surgery. Wallace says she had no pain in her hands during the medical examination and believed she would not have issues holding a knife. (Doc. 38, p. 15).

Nurse McCullers again selected "WNL" (within normal limits) when she examined Wallace for each of the listed body parts. Again, Wallace signed the POMA form, certifying the information stated was true, and acknowledging that falsification is grounds for discharge:

I realize that any evidence of falsification, misrepresentation or omission of this health history and health record will be considered grounds for discharge. I certify that I have answered all questions truthfully and have not knowingly withheld any information concerning questions about my health, either past or present.

Applicant Signature _____  Date 6/22/2020

Nurse Signature _____  Date 6/22/20

(Doc. 32-2, p. 45); (Doc. 33, pp. 9-10). Wallace was again qualified to attend orientation, and she started work on June 23, 2020.

Koch Foods is organized by a union and a collective bargaining agreement (CBA), meaning the company must undergo a bidding process for employee transfers or promotions. (Doc. 33, p. 11). Wallace was initially placed in General Labor but wanted to change positions. So she bid on and was selected for the "Sorter Helper" position. According to Wallace's supervisor, Carolyn Richey, the Sorter is required to hold a chicken in one hand and a knife in the other and use a repetitive motion to remove wings, legs, or other parts from the chicken. Wallace worked in this position for about three months before she began experiencing pain in her left hand in September 2020. Wallace went to see Nurse McCullers several times complaining of pain in her hands. (Doc. 33, p. 11; Doc. 38, p. 16).

On October 12, 2020, Nurse McCullers sent Wallace to the doctor with the Sorter Helper job description. She asked for the doctor to approve or disapprove Wallace working that position, considering her hand pain. The doctor disapproved of the Sorter Helper position and wrote back that Wallace had a diagnosis of carpal tunnel syndrome in her left hand. (Doc. 32-2, p. 53; Doc. 33, p. 12; Doc. 38, pp. 17-18).

4. <u>Koch Foods' Internal Communication About Wallace</u>

On October 13, 2020, Nurse McCullers sent two emails. First, she sent an email that the doctor denied the Sorter Helper job description:[3]

| | |
|---|---|
| **From:** | McCullers, Pamela |
| **Sent:** | Tuesday, October 13, 2020 12:34 AM |
| **To:** | Young, Rickey; Campbell, Thomas; Hawkins, Jeffery; Richey, Carolyn; Smith, John |
| **Subject:** | Sonya Wallace |

Sonya's job description was denied. We are sending her out with a different one. She can only pull guts at this time. She will have a follow up next week and I'll update you more than.

---

[3] According to Richey, "pulling guts" is the job description for the "Correlator" position. In this position, employees use both hands to remove the bird's windpipe and internal organs that the draw machine leaves behind. (Doc. 38, p. 24). So when the doctor disapproved of the Sorter Helper job description, Wallace began the Correlator job (which she later said caused her more pain than Sorter Helper).

Second, Nurse McCullers sent an email about Wallace's interest in getting short-term disability and informing HR personnel that Wallace was scheduled for surgery October 27, 2020:

From: McCullers, Pamela
Sent: Tuesday, October 13, 2020 1:56 AM
To: Harris, Tracy ; Hanners, Tasha ; Smith, John
Subject: Sonya Wallace

Sonya gave verbal consent to discuss her medical condition with HR.

FYI.... Sonya has been here for 4 months. She said she has carpal tunnel and is supposed to have surgery Oct. 27th. She wanted to know what she needed to do for short term Disability. I told her to call Tracy and get her to tell her.

Tracy Harris, Benefits Administrator, responded that she could place Wallace on non-FMLA leave. She gave the number for Wallace to call to apply for short-term disability, but said if Wallace had carpal tunnel before her enrollment date, FMLA would not cover her carpal tunnel syndrome:

From:        Harris, Tracy
Sent:        Tuesday, October 13, 2020 9:26 AM
To:          McCullers, Pamela; Hanners, Tasha; Smith, John
Subject:     RE: Sonya Wallace

She hasn't worked here a year so she will not qualify for FMLA.  I can place her on a non-FMLA leave.

She will need to call FMLA (1-877-734-3652) to receive a denial and to apply for short term.  However, she may not receive it because she was just enrolled on 09-01-2020 and if she had carpal tunnel prior to this date it will be considered pre-existing.  Just an FYI.

On October 16, 2020, Wallace's doctor disapproved of Wallace working in the Correlator position.

On October 18, 2020, Wallace's direct supervisor, Carolyn Richey, was not at work. Evalina Davis, assistant supervisor, placed Wallace in the "Bird Turner" position[4] which did not hurt Wallace's hand that night.

On October 19, 2020, Wallace gave Nurse McCullers a note from her doctor. The note stated that Wallace was scheduled for surgery on

---

[4] According to Richey, "bird turner" turns the birds before they go into the draw machine and only requires the bird turner to "pat the bird," flipping it to face the correct direction. (Doc. 38, p. 19).

October 27, 2020, and she would be out of work for 6 to 8 weeks. Nurse McCullers told Wallace the doctor disapproved of the Correlator position. Then Nurse McCullers sent Wallace home until the surgery. With the pain in her hands, Wallace didn't think she could perform any other job before the surgery. So she didn't argue with Nurse McCullers's suggestion that she go home. (Doc. 33, p. 13).

On October 20, 2020, Nurse McCullers sent an email detailing her October 19 conversation with Wallace:

**From:** McCullers, Pamela <Pamela.McCullers@kochfoods.com>
**Sent:** Tuesday, October 20, 2020 1:11 AM
**To:** Benefield, Margaret <Margaret.Benefield@kochfoods.com>; Harris, Tracy <Tracy.Harris@kochfoods.com>; Hanners, Tasha <Tasha.Hanners@kochfoods.com>; Smith, John <John.Smith@kochfoods.com>
**Subject:** FW: Fax Received from CSID: 2562369775 - Pages received: 2

Sonya Wallace phone number is ██████████ if you need to call her.

Her 1st and 2nd job description was disapproved. She was sent home until after her surgery on the 27th per her MD. She said she already talked to HR about an non fmla leave. I gave her a job description to be approve for when she came back after surgery. She said she didn't want that job and was going to get it disapproved. I told her that after her surgery the goal was supposed to be that she was 100 percent and could do any job out here. She said she knew what to do because last time the nurse told her. I asked her what she was talking about. Supposedly, as Tyson she had a work injury and was dx with caporal tunnel then. She had surgery on her right wrist. I asked her did she tell us on the physical. She said yes she thought. I looked and she didn't. She tried to say, she told me during the physical. I told her I would have written it down. Plus, carpal tunnel and wrist issue are questions and she marked no. She also marked no, for a work injury. She then said she guess she forgot. I told her by law, I would have to send it to HR. She told me that was fine for me to do my job. She said, that she didn't think short term was going to pay her anyways so she was dropping that as soon as she could. I told her that Tracy might have known she had a preexisting dx that I was unaware of. That Tracy worked here when it was Tyson's and might remember. That all I could tell her was to do what everyone already told her. To call tomorrow and make sure HR knew she was out now instead on the 27th so she could be on Non LOA. To call Tracy about the short term and upon returning she would have to have job description approved and doctor's excuse returning her without any restrictions. She asked if I was firing her because of the other that she needed insurance for the surgery. I told her I didn't fire people period. That HR could call her about that but to do the other stuff so she didn't get into trouble. She thanked me and left.

Tracy Harris responded:

| | |
|---|---|
| **From:** | Harris, Tracy |
| **Sent:** | Tuesday, October 20, 2020 9:26 AM |
| **To:** | McCullers, Pamela; Benefield, Margaret; Hanners, Tasha; Smith, John |
| **Cc:** | Cisne, Randy |
| **Subject:** | RE: Fax Received from CSID: 2562369775 - Pages received: 2 |

I DON"T remember anything about her when she worked for Tyson.  I didn't know if she had a preexisting dx or not.

When I spoke to her after you told her to call me she said she had carpel tunnel in her left hand.  I explained to her how short term disability is filed and told her that if she had been dx and or treated for it 3 months prior to her insurance effective date it may not cover it.  AS far as her previous work/comp surgeries or anything about her for that matter... no I don't remember.

I've done what I need to do therefore I do not need to call her.  She is eligible for a non-FMLA for up to 3 months if HR decides to retain her.  She falsified documents and that is a terminating offence but I (like you) don't make those decisions.

I have already spoken to her about the short term and informed her that the only way she would know if she qualified is to file a claim I don't make those decisions either.

Tracy

## 5.  Wallace's Termination from Koch Foods

Margaret Benefield (HR Manager) received the two October 20 emails. That day, Benefield and Zabrina Davis (HR Clerk) signed Wallace's Personnel Action Form that Wallace was discharged for falsifying documents.

(Doc. 32-4, p. 77).

On October 21, 2020, Wallace spoke with Everlina Inu (Benefits Department) and was approved for short-term disability for her surgery. That same day, on a phone call, Benefield informed Wallace she was being terminated for falsifying information on her job application. Benefield said that Wallace had a carpal tunnel diagnosis and prior surgery while at Tyson Foods that she failed to disclose. Wallace never returned to work for Koch Foods. On November 7, 2020, she received a formal termination letter:

Sonya Wallace

████████████

11/04/2020

Dear Sonya:

Koch Foods is a service oriented company and a recognized leader in the poultry industry. In order to maintain this position, it is imperative that every employee follows company policies.

According to company Rules of Conduct, type 1 number 17, falsification of any work record is grounds for immediate discharge. Therefore, in accordance with company policy, your employment with Koch Foods was terminated effective 10/21/2020.

We understand that there may be extenuating circumstances. If so, please contact us when all matters have been settled, so that we may review your rehire eligibility and determine if employment opportunities are available.

The above notification will be placed in your performance file in absentia. In addition, a copy of the Disciplinary Action will also be recorded. If you have any questions, please give me a call at (256) 354-1948.

Regards,

Zabrina Davis
Human Resources Generalist
(256) 354-1927



(Doc. 32-6, p. 98) (circle added).

Wallace now sues Koch Foods for Disparate Treatment (Count One); Retaliation (Count Two); and Failure to Accommodate (Count Three), all under the ADA/ADAAA. Koch Foods has moved for summary judgment on all claims. (Doc. 31).

## STANDARD OF REVIEW

Summary judgment is appropriate only when the moving party shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party must go beyond mere allegations to offer specific facts creating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 324. In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002).

## DISCUSSION

The parties present many arguments under the *McDonnell Douglas* burden-shifting framework. But the Eleventh Circuit has recently steered away from *McDonnell Douglas* at the summary judgment stage and toward the simpler, Rule 56-based question: Is there a "sufficient evidentiary basis for the jury to find that the defendant intentionally discriminated against the plaintiff?" *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 947 (11th Cir. 2023) (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004)). And "an employee may present circumstantial evidence—in any form—that creates a reasonable inference of retaliation." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023).

So, for each claim, the court (1) considers the parties' evidence on both sides, then (2) determines whether a jury, viewing that evidence, could reasonably infer that Koch Foods intentionally discriminated against Wallace because of her disability.

## I.  Wallace's Disparate Treatment and Retaliation Claims (Counts One and Two)

Wallace presents the same evidence for her disparate treatment and retaliation claims. So the court considers the evidence for both claims together.[5]

<u>Koch Foods' Evidence</u>: Koch Foods says that it terminated Wallace because she falsified work documents, which is grounds for immediate termination (even on the first offense) per the Rules of Conduct. (Doc. 33, pp. 16-18). Koch Foods' Rules of Conduct support this nondiscriminatory reason for terminating Wallace:



**RULES OF CONDUCT – TYPE 1 (Reviewed 1-2-18)**
VIOLATIONS OF THE FOLLOWING RULES WILL BE GROUNDS FOR *IMMEDIATE TERMINATION* (EVEN ON THE FIRST OFFENSE).

1.  The possession, storage of, use, or presence in the system of alcohol, drugs, or other controlled substance (including illegal use or disbursement of prescription drugs).
2.  Refusing to submit to a drug or alcohol test.
3.  Filing a fraudulent worker's compensation claim.
4.  Falsifying Company employment or pay documents or any other work-related document, or making false representations verbally or in writing.
5.  Theft of any product, Company property, or another person's property.
6.  Any act of sabotage.
7.  Becoming involved in a crime, an accessory to crime, or withholding information concerning a crime.
8.  Creating a hostile work environment or otherwise violating the Company's anti-harassment and anti-discrimination policy.
9.  Willful refusal to follow reasonable instructions or directions of a supervisor or manager.
10. Intentional or reckless acts, including horseplay or practical jokes, which endanger employees or causes destruction of Company property.
11. Possession or use of firearms or other weapons on Company property or while on duty.
12. Possession or use of dangerous materials or intoxicants on Company property or while on duty without authorization.
13. Job abandonment.
14. Fighting or provoking a fight (DO NOT PLACE HANDS ON OTHER PEOPLE OR USE PROVOKING LANGUAGE).
15. Making false or malicious statements to harm or destroy the reputation, authority, or official standing of an employee, the Company, or its products.
16. Falsification of any work record, time clock punch, report, document, form, application, etc.
17. Sleeping on the job.
18. Unauthorized use of Company-leased or -owned equipment, tools, or machinery.
19. Gambling on Company premises.
20. Use of Profanity towards employees, supervisors, management, visitors, vendors, or customers.
21. Threats of violence or terrorism toward anyone.
22. Serious misconduct that is, or is not, covered in this policy.
23. Smoking in any Koch Foods facility or in any area other than designated outside areas.

---

[5] Although the parties dispute whether Wallace has established a prima facie case (of both disparate treatment and retaliation), the question before the court is whether there is sufficient evidence of intentional discrimination. *See Tynes*, 88 F.4th at 947 (emphasis added).

(Doc. 32-2, p. 22) (circles added). Koch Foods says it has not treated Wallace any differently than other employees because it has terminated 29 employees, including Wallace, for this same offense since 2016. (Doc. 33, pp. 26-27; *see* Doc. 32-4, p. 74 (list of all 29 employees)). And Koch Foods shows that Wallace admitted she falsified her application because she thought her medical history would disqualify her from working at Koch Foods:

> 4     Q.  So you remembered that one, but
> 5 you didn't -- you didn't put the carpal
> 6 tunnel, did you?
> 7     A.  I sure didn't.
> 8     Q.  Ms. Wallace, isn't it correct that
> 9 you didn't -- you didn't disclose to Koch
> 10 Foods any of your prior issues with your
> 11 wrists, hands, fingers, your carpal tunnel,
> 12 your numbness, your tingling, any of your
> 13 prior on-the-job injuries, any of your prior
> 14 work restrictions, any of your prior
> 15 workers' comp claims because you thought it
> 16 would disqualify you from being able to work
> 17 at Koch Foods?
> 18     A.  Yes.
> 19     Q.  Isn't that right?
> 20     A.  Yes.
> 21     Q.  And that's why you did it, isn't
> 22 it?  That's why you lied on your
> 23 questionnaire; isn't that right?
> _____ Page 133
> 1         MR. EDWARDS: Object to form.  You
> 2 can answer, Ms. Wallace.
> 3     A.  Yes.

(Doc. 32-1, p. 34). Further, Koch Foods presents emails between Nurse McCullers and Benefield in HR stating that when Wallace told Nurse McCullers in October 2020 of her previous carpal tunnel diagnosis and surgery, it was the first time either McCullers or Benefield learned of it. And Nurse McCullers' email stated that this information was not disclosed on Wallace's medical forms, leading them to realize Wallace had falsified her application. (Doc. 32-5, p. 62).

Koch Foods also shows that its decision to terminate Wallace was made *after* her benefits were being approved. Wallace says Koch Foods' Benefits Department notified her she was approved for short-term disability for her surgery on October 21, 2020 (doc. 6, p. 8, ¶ 58), which

Koch Foods shows was *after* HR signed Wallace's Personnel Action Form discharging her for falsifying documents. (Doc. 32-4, p. 77). And before that, the emails between Nurse McCullers and Tracy Harris show that Harris had determined Wallace was eligible for non-FMLA leave for up to 3 months and told Wallace how to file the claim for short-term disability. (Doc. 32-5, p. 62).

<u>Wallace's Evidence</u>: Wallace says Koch Foods terminated her when she requested time off for carpal tunnel surgery, thus regarding her as disabled and subjecting her to adverse treatment based on her disability. (Doc. 6, pp. 5-9; Doc. 38, pp. 32-33). Wallace emphasizes that she told Nurse McCullers of her previous carpal tunnel surgery during her physical exam, so Koch Foods knew about her hand pain and hired her anyway.[6] (Doc. 38, pp. 5-14). But she says things changed when McCullers learned that Wallace needed 6 to 8 weeks off work for surgery. (Doc. 38, p. 45) ("On October 13, 2020, McCullers knew Wallace was scheduled for surgery on October 27, 2020, but did not know until October 19, 2020, that the doctor was requesting she be out of work for 6 to 8 weeks."). Wallace says the timing is suspicious because Nurse McCullers and Tracy Harris only began discussing that Wallace had falsified documents upon learning of the time she would be out of work. *Id.* And she says Koch Foods should have investigated whether she had previously disclosed her carpal tunnel surgery and diagnosis. (Doc. 38, p. 12).

<u>Analysis</u>: To avoid summary judgment, Wallace must go beyond mere allegations to offer specific facts creating a genuine issue for trial. *Anderson*, 477 U.S. at 324. And considering these facts, the court must determine "whether there is *enough* evidence to show that the reason for [Wallace's termination] was illegal discrimination." *Tynes*, 88 F.4th at 947 (emphasis added).

Wallace admits that she lied to Koch Foods about her past surgery to ensure she was offered a job. And the evidence shows that, at some point, Koch Foods discovered that Wallace had falsified documents—an

---

[6] Nurse McCullers denies this allegation. But at the Rule 56 stage, the court views the testimony in the light most favorable to Wallace. *Cuesta*, 285 F.3d at 966.

offense Koch Foods has fired many employees for, and an offense that constitutes a legitimate reason to terminate an employee. *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022).

Wallace fails to present enough evidence to allow a juror to find that Koch Foods instead fired her because of, or in retaliation for, her disability—rather than for lying about it. The only factual evidence Wallace offers is a close temporal proximity between Koch Foods learning Wallace would be out of work for 6 to 8 weeks and terminating her. But "temporal proximity by itself generally cannot prove that an employer's proffered reasons are pretextual." *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1219 (11th Cir. 2021).

Further, because Wallace is the non-moving party, the court will assume that Koch Foods did not investigate her termination. But it did not have to do so. Benefield could rely on a good-faith belief that Wallace had falsified employment records when Nurse McCullers's email suggested Wallace did so and when Benefield confirmed so with a review of Wallace's employment record. (Doc. 32-4, pp. 28-29). Benefield did not need to prove her belief was correct before she terminated Wallace. *See EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000).

Because Koch Foods has put forth a legitimate, nondiscriminatory reason for Wallace's termination that she cannot prove is pretextual, there is insufficient evidence for a jury to find that Koch Foods' reason for terminating Wallace was illegal discrimination. So the court **GRANTS** Koch Foods' motion for summary judgment on Wallace's disparate treatment and retaliation claims.

## II.   Wallace's Failure to Accommodate Claim (Count Three)

<u>Koch Foods' Evidence</u>: Koch Foods says that Wallace never requested an accommodation. It says that Wallace didn't request to send her job descriptions to the doctor, but that Nurse McCullers did so to learn if Wallace could still perform the essential functions of her job without pain. And Koch Foods says that when the doctor denied both the Sorter and Correlator job descriptions, Wallace did not request to be

placed in another position. Instead, Koch Foods shows that Wallace thought that she should go home until her surgery:

> Q: And you did not ask to stay at work until your surgery, did you?
> A: No, ma'am.
> Q: Okay. So it was okay with you to go out until after you had your surgery?
> A: Yeah.
> Q: Okay.
> A: Yes, ma'am.

(Doc. 32-1 at p. 62, Dep. 243:12-19)

> Q: I -- I'm going to ask you about that. I'm asking you if this was retaliation, the telling -- you know, you going off work till your surgery, you having to come back without work restrictions and having a job description approved by your doctor, was any of that a problem to you?
> A: No, ma'am.
> Q: You thought that was handled properly?
> A: It was handled properly.

(Doc. 32-1 at p. 62, Dep. 245:1-18)

(Doc. 42, p. 12; Doc. 33, p. 36-37). Koch Foods also shows that Wallace admitted she never requested an accommodation from HR:

> 20 Q. And that they had outlined a way
> 21 for you to request a reasonable
> 22 accommodation if you needed it for a
> 23 disability; is that right?
>
> Page 141
>
> 1 A. Right.
> 2 Q. And that you needed to contact the
> 3 complex HR manager; is that right?
> 4 A. Yes.
> 5 Q. Did you ever contact Mr. Randy
> 6 Cisne, the complex HR manager, about any
> 7 type of accommodation that you needed?
> 8 A. No, ma'am.

(Doc. 32-1, p. 36).

20     Q.  Okay.  You know before when we
21  were looking through the policy about if you
22  needed an accommodation so you could do your
23  job duties?

Page 257

1     A.  Right.
2     Q.  Who to call and who to ask, did
3  you ever ask anyone at Koch Foods to do that
4  for you with regards to your carpal tunnel?
5     A.  No, ma'am.
6     Q.  Okay.  Did you ever ask them for
7  any kind of accommodation for your carpal
8  tunnel?
9     A.  Because I never go talk to nobody,
10  I didn't know who to go talk to.
11     Q.  Even though you had the policy and
12  even though it was posted in the break room
13  and there were everyone's -- not only their
14  work phone number and their cell phone
15  number, you're saying you didn't know who to
16  talk to?
17     A.  I never looked at the board.  I
18  didn't.  I know it was up there, but I just
19  didn't --
20     Q.  But if you needed -- if you needed
21  help, you knew -- you knew where to go,
22  right?
23     A.  Yeah.  Yes, ma'am.

1     Q.  Okay.  And you -- and you never
2  did ask, right?
3     A.  No, ma'am.
4     Q.  Okay.  Other than bringing in your
5  surgery re -- that your doctor said you
6  needed your surgery, did you ever ask for
7  anything else at Koch Foods in order for you
8  to do your job with your carpal tunnel?
9     A.  No, ma'am.

(Doc. 32-1, pp. 65-66). And Koch Foods says that even if Wallace had requested an accommodation, it would've been required to follow the bid process of its CBA to move her permanently to an open position (doc. 33, pp. 25-26)—but that even Wallace admits that she was unaware of any available position that she could perform with her hand pain:

17     Q.  And were you aware at any time
18  when you were working at Koch Foods your
19  second -- second time you went there of
20  there being a -- a bid job open in the paw
21  room that you could bid on?
22     A.  No, ma'am.
23     Q.  Okay.  What other job did you

Page 195

1  think you were able to do with the -- the
2  problems you were having with your hands
3  when you worked at Koch Foods?
4     A.  Well, there's really nothing --
5     Q.  Yeah.
6     A.  -- I can do.

(Doc. 32-1, p. 50). Finally, Koch Foods says Wallace may argue that she requested leave as an accommodation. As stated above,[7] Koch Foods presents evidence that Tracy Harris told Wallace how to file a claim for short-term disability (doc. 32-5, p. 62), and that Wallace admitted she was approved for short-term disability for her surgery on October 21, 2020, before she was terminated. (Doc. 6, p. 8, ¶ 58). Harris also found Wallace eligible for non-FMLA leave before her termination. (Doc. 32-4, p. 72). So Koch Foods says it never denied Wallace an accommodation.

<u>Wallace's Evidence</u>: In her amended complaint, Wallace says that she "requested a reasonable accommodation," but does not provide any facts or evidence in support of this assertion. (Doc. 6, p. 14, ¶ 111). She says that while her direct supervisor (Richey) was out one day, the acting assistant supervisor (Davis) placed her in the bird turner position that did not cause pain in her left hand. *Id.*; Doc. 38, pp. 34-35. Based on this, Wallace says Koch Foods had the ability to place her in an accommodating position that did not hurt her hand but terminated her instead. (Doc. 6, pp. 14-16). She also says that injured employees can be placed in "second processing" where they place labels and stickers on boxes until their injury has improved, but that Koch Foods did not provide her with this option. (Doc. 38, pp. 36-37).

Based on her supervisor Carolyn Richey's deposition testimony, Wallace says that, under HR's policy, she could've switched jobs if she hadn't complained of her hands hurting—that when a complaint of pain is made, the decision where to place an employee then switches from Richey to the nurse and HR. (Doc. 38, p. 34; Doc. 32-8, pp. 13-15). She also says HR never gave her any ADA documentation to complete, and that "if Benefield would have given Wallace the ADA documentation [when she learned of her scheduled surgery], Wallace could have been given an accommodation to perform the basic functions of her job, potentially place Wallace in 'second processing,' or putting labels on stickers in the supply area." (Doc. 38, p. 37).

---

[7] *See supra* pp. 13-14 (Part I, Koch Foods' Evidence).

Wallace also says that Nurse McCullers tried to find a suitable job to accommodate Wallace twice by sending the job descriptions to her doctor but didn't send another job description after the first two were denied.

Finally, Wallace argues that requesting time off can be a request for a reasonable accommodation. *See Coker v. Enhanced Senior Living, Inc.*, 897 F. Supp. 2d 1366, 1379 n.10 (N.D. Ga. 2012).

<u>Analysis</u>: Although Wallace *now* suggests many accommodations that she says would have been reasonable, she fails to present evidence that would allow a reasonable juror to find that she requested a reasonable accommodation before her termination.

Under Eleventh Circuit case law, failure to unambiguously request or identify an accommodation is grounds for summary judgment on a failure to accommodate claim. *See Hudson v. Tyson Farms, Inc.*, 769 F. App'x 911, 918 (11th Cir. 2019); *see also Byrd v. UPS*, 814 F. App'x 536, 539-40 (11th Cir. 2020); *see also Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) ("[T]he duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made . . . .").

At this stage, Wallace must go beyond mere allegations and provide evidence to support her assertions. *Anderson*, 477 U.S. at 324. But Wallace presents no evidence for a jury to find that she ever requested an accommodation at Koch Foods. She fails to contradict Koch Foods's evidence that she was satisfied with going home before her surgery. She fails to present evidence to suggest that she requested ADA documentation from Benefield. She fails to present evidence to suggest that she asked Nurse McCullers to send another job description to her doctor. And she fails to present evidence to suggest that she asked to be placed in the "bird turner" position or in "second processing."[8]

---

[8] And even if the court were persuaded that requesting time off for surgery was a request for a reasonable accommodation, Koch Foods accommodated Wallace when it found her eligible for non-FMLA leave and informed her she was approved for short-term disability before her surgery.

Wallace also fails to present evidence that would allow a reasonable juror to find that Koch Foods could provide Wallace with these accommodations if requested. Even if Wallace could perform the essential functions of the "bird turner" and "second processing" positions (and even if she were qualified for them), the record does not support the existence of an open position in those areas. In fact, Wallace stated that she knew of no vacancies in any position and that she couldn't perform any position without pain. And the ADA does not require Koch Foods to bump another employee from a non-vacant position to accommodate Wallace. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1257 (11th Cir. 2001) (citing *Willis v. Conopco, Inc.,* 108 F.3d 282, 284 (11th Cir. 1997)).

Again, the question the court must answer is "whether there is *enough* evidence to show that the reason for an adverse employment action was illegal discrimination." *Tynes*, 88 F.4th at 947 (emphasis added). As explained, the court finds there is not. So the court **GRANTS** Koch Foods' motion for summary judgment on Wallace's failure to accommodate claim.

## CONCLUSION

For the reasons stated within, the court **GRANTS** Koch Foods' motion for summary judgment in its entirety. (Doc. 31). The court will enter a separate order consistent with this memorandum opinion that closes this case.

**DONE** and **ORDERED** on February 20, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE